FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
(Greenbelt Division)

JUL 0 5 2012

CLERK ____ COURT
DISTRICT OF MARYLAND)

DEPUTY

| | | |
|---|---|---|
| **THOMAS ALSTON** | ) | |
| | ) | |
| Plaintiff, | ) | **JFM 12 CV 2001** BY 和水 |
| | ) | |
| v. | ) | CIVIL ACTION NO. _____ |
| | ) | **JURY TRIAL DEMANDED** |
| **WELLS FARGO BANK, N.A.** | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Thomas Alston, (hereafter the "Plaintiff") and for his

complaint against the Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), alleges as follows:

### Preliminary Statement

1.      This is an action for actual, statutory and punitive damages, costs and attorney's

fees brought pursuant to 15 U.S.C. §1681 et seq. (Fair Credit Reporting Act or FCRA).

### JURISDICTION & VENUE

2.      The jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28

U.S.C. §1331. Venue in this District is proper in that Wells Fargo transacts business here and the

conduct complained of occurred here.

### PARTIES

3.      Plaintiff Thomas Alston is a natural person and resides in the State of Maryland.

He is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

4.      Defendant Wells Fargo is a national banking association organized under the laws

of the United States. America's Servicing Company ("ASC") is a division of Wells Fargo Home

Mortgage ("WFHM") that services loans for other investors under the ASC name. WFHM is a

1

division of Wells Fargo Bank, N.A and primarily services loans for Wells Fargo. On May 8,

2004 WFHM merged into Wells Fargo Bank, N.A.  Wells Fargo is a mortgage originator and

mortgage servicer, and it is a furnisher of information as contemplated by FCRA section 1681s-

2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or

more consumer reporting agencies about consumer transactions or experiences with any

consumer.

## FACTS

5.      Mr. Alston obtained a mortgage loan from BNC Mortgage for a property located

at 2306 N. Capital Street, N.W., Washington, DC 20002 ("Property"). On November 8, 2004 Mr.

Alston paid the mortgage loan in full in a sale between himself and the buyer Christian

Anderson. A Grant Deed was filed in the DC Recorder of Deeds memorializing the sale.

6.      Option One Mortgage initially serviced the mortgage loan for BNC Mortgage but

later transferred its servicing rights to ASC.

7.      Although the mortgage loan was satisfied on November 8, 2004, Wells Fargo did

not file the Certification of Satisfaction in the DC Recorder of Deeds until March 13, 2006.

8.      On or about September 06, 2009 Mr. Alston obtained copies of his credit reports

from the three major credit bureaus and discovered that ASC had reported the mortgage account

as a foreclosure and/or 120 days past due.

9.      In December of 2009, Mr. Alston forwarded dispute letters to the credit bureaus.

Mr. Alston's dispute letters explained that the Wells Fargo account was never delinquent, never

in foreclosure, and paid in full as of November 8, 2004. Mr. Alston supplemented his dispute

letters with a copy of the Grant Deed evidencing the sale between Thomas Alston and Christian

Anderson. The Grant Deed specifically stated that the "AMOUNT OF ANY MORTGAGE OR

DEED OF TRUST OUTSTANDING" was paid in the sale. Mr. Alston requested that credit bureaus investigate the account and remove it from his credit reports.

10.     Upon information and belief the credit bureaus forwarded the disputes to Wells Fargo for investigation of the account.

11.     In or about January of 2010, Wells Fargo instructed the credit bureaus to continue reporting the account as in foreclosure, past due 120 days in April 2005.

12.     On or about March 24, 2010, Plaintiff forwarded another dispute letter to the credit bureaus expressing his dissatisfaction with the credit bureaus investigation results and demanding the credit bureaus perform a thorough investigation of the account.

13.     On or about April 6, 2010, Mr. Alston received an updated credit report from Transunion. Wells Fargo had instructed Transunion to remove the "Foreclosure initiated" remark but to continue reporting the account as 120 plus days past due in April 2005.

14.     On or about April 12, 2010 Mr. Alston disputed the account directly with Wells Fargo. In the dispute letter Mr. Alston stated the mortgage was satisfied on November 8, 2004 and enclosed a copy of the Grant Deed as proof that the mortgage was paid.

15.     On or about May 12, 2010 Wells Fargo responded to Mr. Alston's letter by stating that ASC acquired the loan on September 1, 2004 and that the loan was valid. The letter further stated that this matter was considered resolved and that Wells Fargo would not respond to further inquiries regarding the matter.

16.     Frustrated with his unsuccessful efforts to get Wells Fargo to report the account accurately, Mr. Alston employed the services of a credit repair company in September of 2010.

17.     After patiently waiting nearly a year for the credit repair company to correct the Wells Fargo mortgage account Mr. Alston decided to take matters back into his own hands. On

July 17, 2011, Mr. Alston obtained copies of his credit report. Wells Fargo was instructing the credit bureaus to report the account as 120 days past due in January of 2005 and as paid/closed in June of 2006.

18.    Mr. Alston decided to do more research before he disputed the account again. In July of 2011 Mr. Alston made a visit to the DC Recorder of Deeds. There he found a Certification of Satisfaction from Wells Fargo filed on March 13, 2006. The document stated that the mortgage loan had been satisfied on March 13, 2006. Although that information was incorrect, it proved that Wells Fargo reporting of the account as being paid in June of 2006 was inaccurate; and Mr. Alston hoped that would cause Wells Fargo to do a reasonable investigation into the reporting of the account.

19.    On or about July 26, 2011, Mr. Alston forwarded dispute letters to the credit bureaus. In support of his dispute Mr. Alston attached a certified copy of the Grant Deed evidencing the sale from Plaintiff to Christian Anderson and included a copy of the Certification of Satisfaction recorded on March 13, 2006. In his letter Mr. Alston pointed out that the Grant Deed was certified as true and correct by the DC Recorder of Deeds. Mr. Alston also pointed out that Wells Fargo reporting of the account as paid in June 2006 conflicted with its own document, the Certification of Satisfaction, which stated that the mortgage was paid on March 13, 2006.

20.    Upon information and belief the credit bureaus forwarded the dispute to Wells Fargo for investigation of the account.

21.    After Wells Fargo investigated the July 26, 2011 disputes Wells Fargo instructed:

    a.    Transunion to delete the account;

    b.    Experian to continue reporting the account as delinquent and closed in June 2006 but after subsequent disputes eventually instructed Experian

4

to modify the reporting of the account to never late; and

    c.      Equifax to continue to report the account as 120 days past due and closed in June 2006.

22.     Wells Fargo could not have conducted a detailed, systematic inquiry after receiving disputes from Equifax and Experian because no reasonable inquiry would have determined that Mr. Alston was late on his payments. Because Wells Fargo was the servicer at the time the loan was satisfied, any employee investigating the disputes could have looked at the file and determined the loan was paid in full. Wells Fargo investigation had to be meaningless and thoughtless investigations because Wells Fargo did not report back the same instruction to Equifax and Experian as it did to Transunion. Wells Fargo's actions manifest a reckless disregard for investigating credit inquiries.

23.     Based upon information and belief, Wells Fargo does not allow employees responding to credit reporting disputes to make an independent investigation of the facts or circumstances related to the credit reporting. Furnishers like Wells Fargo simply make sure that the credit bureau is reporting the information that is already maintained in the records that it had already reported to the credit reporting agency. Thus ensuring that no meaningful investigation is conducted and no independent review of documents despite the fact that those documents are readily available to Wells Fargo.

24.     Mr. Alston disputed the Wells Fargo account again with Equifax in October of 2011. Equifax forwarded the dispute to Wells Fargo and Wells Fargo responded by instructing Equifax to continue reporting the account as 120 days past due and closed in June 2006.

25.     Based upon the circumstances of Wells Fargo's instructions to Equifax, Mr. Alston believes that inaccurate Equifax credit reports were published to SunTrust and Capital One on February 25, 2012.

## COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. §1681 s-2(b)

26.     Plaintiff realleges and incorporates paragraphs 1 through 25 above as if fully set out herein.

27.     Wells Fargo both negligently and intentionally violated the Fair Credit Reporting Act at 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct a reasonable investigation with respect to the Wells Fargo mortgage account.

28.     At all times during its investigations of Mr. Alston's disputes, Wells Fargo had access to or actual possession of the entire Alston file. This account was an easy account to investigate based upon that *Wells Fargo received the proceeds* to satisfy the loan on November 8, 2004. Wells Fargo knew or recklessly disregarded that the mortgage loan was not delinquent in 2005 and that it had been satisfied on November 8, 2004. As evidenced by Wells Fargo's current reporting of the account with Experian Wells Fargo knew Mr. Alston was never delinquent on his mortgage payments.

29.     Wells Fargo should have reported the account accurately without any intervention from Mr. Alston. Thereafter, Wells Fargo received numerous notices of dispute from the credit reporting agencies requesting that Wells Fargo investigate the information that it was reporting about Mr. Alston. With reckless disregard for its duties to reinvestigate the dispute, Wells Fargo continued to report that Mr. Alston was delinquent on his mortgage payments. This credit reporting was inaccurate and would not have continued had Wells Fargo conducted a proper

investigation into the numerous disputes that Mr. Alston made through the credit reporting agencies.

30.     Said actions of Wells Fargo were done negligently or with a reckless disregard for Mr. Alston's rights under the FCRA at §1681s-2(b)(1)(D) & (E), which states "if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—(i) modify that item of information; (2) delete the item of information; or (iii) permanently block the reporting of that item of information.

31.     Wells Fargo reported the same account differently to the three credit reporting agencies after receiving materially identical disputes from each credit reporting agency. Wells Fargo eventually instructed Transunion to delete the Wells Fargo account after investigating Mr. Alston's dispute with Transunion of the account. Wells Fargo did not modify, delete or block the reporting of the Wells Fargo account to Equifax but continued to report the account as delinquent to Equifax after investigating Mr. Alston's dispute with Equifax of the account. Wells Fargo eventually modified its reporting of the account to Experian by reporting the account as never late.

32.     At the time of the investigations, Wells Fargo had received the funds from the sale of the property, possessed the account notes, access to the public records, and had filed a Certificate of Satisfaction stating the mortgage was satisfied in March of 2006. There is no factual scenario, in which Wells Fargo could have verified the account as delinquent in 2005 and closed in June of 2006, after investigating Mr. Alston's dispute.

33.     Because the inaccurate information could not be verified, Wells Fargo had a duty to delete the account. Rather, Wells Fargo had a duty to perform a reasonable investigation and modify the account to its correct status as never late.

34.     As a result of conduct, actions and inactions of Wells Fargo, the Plaintiff suffered actual damages including without limitation, by example only and as described herein by Plaintiff: out-of-pocket costs, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

35.     Wells Fargo's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Wells Fargo was negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

36.     The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees from Wells Fargo in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

WHEREFORE, your Plaintiff prays for judgment for actual, statutory and punitive damages against Wells Fargo; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the legal rate, and such other relief as the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

**THOMAS ALSTON**

By _Thomas Alston_
Thomas Alston, *Pro Se*
10012 Cedarhollow Ln
Largo, MD 20774
(301) 350-5780

8